# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MARIA O'REILLY-BROOKES,**

    **Plaintiff,**

v.                                                           Case No: 6:22-cv-1225-PGB-DAB

**EXPERIAN INFORMATION SOLUTIONS, INC., PROFESSIONAL FINANCE COMPANY, INC. and U.S. ANESTHESIA PARTNERS OF FLORIDA, INC.,**

    **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendant U.S. Anesthesia Partners of Florida, Inc.'s ("**Defendant Anesthesia Partners**") Motion to Dismiss Count VI of the Complaint (Doc. 22 (the "**Motion**")) and Plaintiff Maria O'Reilly-Brookes' response in opposition (Doc. 31 (the "**Response**"). Upon consideration, the Motion is due to denied.

## I. BACKGROUND[1]

This lawsuit arises from a dispute between Plaintiff and Defendants regarding the reporting and attempted collection of Plaintiff's alleged debt. (*See generally* Doc. 1).

On October 21, 2020, Plaintiff obtained medical services from Defendant Anesthesia Partners. (*Id.* ¶ 21). Although under the impression all respective charges had been paid, Plaintiff received a collection letter from Defendant Anesthesia Partners on September 27, 2021 for $750.32 (the "**Debt**"). (*Id.* ¶¶ 22–25). This total was the aggregate of two supposedly past due bills, each for $375.16, stemming from Plaintiff's aforementioned medical visit. (*Id.* ¶¶ 26–27). Shortly thereafter, Defendant Anesthesia Partners assigned the Debt to Professional Finance Company, Inc. ("**PFC**"), a licensed Consumer Collection Agency, for collection. (*Id.* ¶¶ 18, 30). Subsequently, PFC mailed Plaintiff its own collection letter. (*Id.* ¶ 31). In response, Plaintiff's husband sent two checks: one check to PFC for $375.47 on December 17, 2021, and another check to Defendant Anesthesia Partners for $375.16 on January 11, 2022. (*Id.* ¶¶ 32–33).

However, in February 2022, PFC began reporting the Debt as an unpaid collection account, with a balance of $375, to nationwide credit reporting agencies,

---

[1] This account of the facts comes from Plaintiff's Complaint. (Doc. 1 ("**Complaint**")). The Court must accept these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

2

including Experian Information Solutions, Inc. ("**Experian**"). (*Id.* ¶¶ 36–37).[2] Plaintiff soon learned the Debt had been wrongfully reported as unpaid when she applied for, and was denied, a mortgage with Bank of America ("**BOA**"). (*Id.* ¶¶ 38, 44). As part of the approval process, BOA obtained a consumer report from Corelogic Credco, LLC ("**Corelogic**"). (*Id.* ¶ 39).[3] To Plaintiff's surprise, BOA was unable to approve Plaintiff's application because PFC's collection tradeline lowered Plaintiff's credit score. (*Id.* ¶¶ 42–44).[4]

Around April 1, 2022, Plaintiff disputed the accuracy of the PFC collection account to Corelogic, revealing the Debt had been fully paid long before its reporting status as "unpaid" began. (*Id.* ¶¶ 45–46). CoreLogic notified Experian of the issue, and Experian initiated an Automated Consumer Dispute Verification Request ("**ACDV**"). (*Id.* ¶¶ 49–53). The ACDV was subsequently forwarded to PFC, and PFC informed Defendant Anesthesia Partners of the dispute. (*Id.* ¶¶ 36–37).[5] Defendant Anesthesia Partners sent PFC results from their respective

---

[2] The Court was notified on August 24, 2022 that Plaintiff and Experian reached a settlement as to all pending claims against them in this action. (Doc. 28).

[3] Corelogic collects and merges information contained in the databases of various consumer reporting agencies for the purpose of generating consumer reports. (Doc. 1, ¶ 13). Corelogic was voluntarily dismissed without prejudice from this action on September 7, 2022. (Doc. 32).

[4] PFC's collection tradeline was the only "derogatory reporting of any kind" listed on Plaintiff's report, leading Plaintiff to conclude that the account in dispute was the "direct and proximate cause" of Plaintiff's lowered credit score. (Doc. 1, ¶¶ 42–43).

[5] PFC's job, upon receipt of this specific ACDV, would have been to verify details related to the account, such as the amount past due, current balance, and overall status. (*Id.* ¶ 54).

investigation and relevant billing information. (*Id.* ¶¶ 56–57).[6] However, the information Defendant Anesthesia Partners offered was "extremely convoluted," listing various independent charges as $0.00 with a seemingly baseless grand "invoice balance" of $375.16. (*Id.* ¶¶ 58–59, 61). Yet, PFC verified the reporting as accurate, sending Plaintiff another collection letter that indicated Defendant Anesthesia Partners itself confirmed the Debt was unpaid. (*Id.* ¶ 62; Doc. 1-1, p. 6).

On July 14, 2022, Plaintiff initiated this lawsuit, asserting various causes of action against Defendants CoreLogic,[7] Experian,[8] PFC, and Anesthesia Partners. (Doc. 1). However, as is relevant here, Plaintiff asserts a sole claim against Defendant Anesthesia Partners for unlawful debt collection under the Florida Consumer Collection Practices Act ("**FCCPA**"), Section 559.72(9) (Count VI).[9] Defendant Anesthesia Partners now moves to dismiss Count VI for failure to state a claim upon which relief can be granted, and the matter is ripe for review.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a

---

[6]   Specifically, the $375.16 charge stems from an invoice titled "BAD DEBT PLACEMENT PROFESS" and another referred to as "BAD DEBT RECALL PROFESSION," resulting in an "INVOICE BALANCE" of $375.16. (*Id.* ¶ 60; Doc. 1-1, pp. 7–10).

[7]   *See supra* note 4.

[8]   *See supra* note 2.

[9]   The FCCPA is the state counterpart to the federal FDCPA, *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010) (per curiam), and "was enacted as a means of regulating the activities of consumer collection agencies within [Florida]." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

    A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

    In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III. DISCUSSION

Defendant Anesthesia Partners moves to dismiss Count VI of the Complaint for failure to state a claim upon which relief can be granted. (*See generally* Doc. 22). Specifically, Defendant Anesthesia Partners challenges Plaintiff's FCCPA claims on two primary fronts. First, Defendant Anesthesia Partners contends that Plaintiff failed to adequately allege *actual* knowledge the debt was illegitimate. (*Id.*). Second, Defendant Anesthesia Partners claims Plaintiff alleges inadequate facts to either support a conclusion that Defendant Anesthesia Partners attempted to claim, collect, or threaten to enforce the Debt after it was allegedly paid in full, or asserted the existence of some other legal right that did not exist. (*Id.*). The Court disagrees with both arguments and will address its reasoning in turn.

In general, the FCCPA prohibits persons from engaging in certain practices while attempting to collect consumer debt. § 559.72.[10] In particular, Section 559.72(9) of the FCCPA prohibits a person, in collecting consumer debts, from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person *knows* that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person *knows* that the right does not exist." § 559.72(9). To plead a viable cause of action under Section 559.72(9), a party must

---

[10] "To recover under the FCCPA, a plaintiff must show: (1) the subject debt is a 'consumer debt,' and (2) the defendant engaged in an act or omission prohibited by the FCCPA." *Rafer v. Internal Credit Sys., Inc.*, No. 19-CV-1312, 2021 WL 2554048, at *5 (M.D. Fla. June 22, 2021); *see Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1315 (M.D. Fla. 2017). Here, the parties do not dispute that the debt at issue classifies as a "consumer debt." Thus, the sole question that remains with regards to this claim is whether the actions of Defendant Anesthesia Partners violated provisions of the FCCPA.

"demonstrate that the debt collector[11] defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010); *see, e.g.*, *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000); *In re Cooper*, 253 B.R. 286, 290 (N.D. Fla. 2000) (highlighting that the definition of "knows" under Florida law requires actual knowledge of wrongdoing). However, merely setting forth conclusory statements that Defendant had knowledge, without pleading sufficient factual allegations to illustrate how such knowledge was acquired, is not enough. *Lima v. Bank of Am., N.A.*, 249 F. Supp. 3d 1308, 1313 (S.D. Fla. 2017); *Reese v. JP Morgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009).

### A. Actual Knowledge

The crux of Defendant Anesthesia Partners' initial argument centers upon its contention that Plaintiff failed to allege it had the requisite "actual" knowledge the debt was illegitimate. (Doc. 22, pp. 5–6). Although Defendant Anesthesia Partners repeatedly asserts that Plaintiff has failed to allege sufficient facts to establish a facially plausible claim, the Complaint demonstrates otherwise as certain crucial allegations establish "actual" knowledge for purposes of the present Motion.

Most explicitly, for example, Plaintiff states that Defendant "had proof of payment in its possession and/or control *and* was informed by [Plaintiff] that

---

[11] It is important to note that FCCPA is not "restricted to debt collectors." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372 (S.D. Fla. 2011).

payment had been made in full." (Doc. 1, ¶ 94) (emphasis added). In taking factual allegations as true and viewing them in the light most favorable to Plaintiff, Defendant plausibly had been *informed* the debt was satisfied, and thus, Defendant logically would have direct knowledge the debt was not legitimate. Accordingly, the aforementioned statements alone likely suffice to meet the standard for alleging "actual knowledge" at this point in the litigation. In any event, the following "reasonable inference" based on agency theory provides an additional avenue for Plaintiff to meet her burden. (*See* Doc. 31, pp. 5–8).

As other district courts within the Eleventh Circuit have suggested, "corporation and agency principles . . . imput[e] the actions of a corporation's agents . . . to the corporation itself, which is the only entity that must have knowledge of the illegitimacy of the debt." *Scott v. Fla. Health Scis. Ctr., Inc.*, No. 8-CV-1270, 2008 WL 4613083, at *3 (M.D. Fla. Oct. 16, 2008). To illustrate, in *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1358 (S.D. Fla. 2000), plaintiff was treated for a medical condition at a hospital. Although plaintiff allegedly fulfilled his payment obligations, he received a letter from the hospital indicating additional funds were due for the medical services purportedly covered by his HMO healthcare plan. *Id.* Later, the hospital sent a debt collection agency the account for collection. *Id.* In turn, the debt collection agency sent collection letters to plaintiff, demanding payment that exceeded the amount supposedly owed. *Id.* The *Kaplan* plaintiff argued that the requisite knowledge the debt was illegitimate under the FCCPA could be imputed to the debt collector as an agent of the hospital,

8

who had already supposedly been paid. *Id.* at 1363. Thus, the court denied defendants' motion to dismiss "based on insufficient allegations of knowledge" because it could not determine "[a]t this stage of the proceedings . . . [whether] it appears beyond doubt that the plaintiffs can prove no set of facts that would support their claims." *Id.*

Similarly, here, Defendant Anesthesia Partners "assigned [Plaintiff's] Debt to PFC for collection." (Doc. 1, ¶ 30). At this stage in the litigation, the Court need not delve into the extent or intricacies of the relationship between PFC and Defendant Anesthesia Partners—a reasonable inference leads to the conclusion that PFC is an agent of Defendant Anesthesia Partners for the purposes of debt collection. In fact, the Complaint attaches a letter in which PFC plainly confirms Defendant Anesthesia Partners is its *client*. (Doc. 1-1, p. 6). Thus, upon resolving "doubts as to the sufficiency of the [C]omplaint in the [P]laintiff's favor," *Hunnings*, 29 F.3d at 1484, this Court can reasonably infer that knowledge of PFC collecting approximately half the Debt could be imputed to Defendant Anesthesia Partners. As a result, Defendant Anesthesia Partners may be charged with actual knowledge of the Debt's illegitimacy after January 11, 2022 because, by that time, 1) Defendant Anesthesia Partners received a check for roughly half of the amount it was allegedly owed (Doc. 1, ¶ 33; Doc 1-1, p. 2), and 2) its agent PFC had previously collected the other half (Doc. 1, ¶ 32; Doc 1-1, p. 2). For the aforementioned reasons, the Court finds that Plaintiff has sufficiently alleged Defendant Anesthesia Partners acquired actual knowledge of the debt's invalidity.

9

### B. Claim, Attempt, or Threaten to Enforce a Debt

Defendant Anesthesia Partners further contends that the Complaint sets forth "no allegations whatsoever" that it acted to collect Plaintiff's Debt at any time after December 17, 2021. (Doc. 22, pp. 6–7). Defendant Anesthesia Partners argues that it merely assigned the Debt to PFC for collection, PFC then mailed Plaintiff a collection letter, and the Debt was subsequently paid in full. (*Id.* at p. 5). However, Defendant Anesthesia Partners fails to consider the allegations that sometime after April 1, 2022—months after the Debt was allegedly paid—it received notice of the ACDV and verified in a letter to PFC, its *client*, that "[Plaintiff's] balance [was] still owing." (Doc. 1, ¶¶ 45, 55–62; Doc. 1-1, p. 6).[12] Again, at the current stage in the proceedings, the Court can reasonably construe the aforementioned communication from Defendant Anesthesia Partners as an attempt to help enforce collection of the Debt by affirming its legitimacy.

Moreover, when actions of a corporation's agents are "performed within the scope of their duties, and done in furtherance of the corporation's business, they

---

[12] In this letter, PFC states that Defendant Anesthesia Partners confirmed, "The patient had two balances for the same date of services with different providers. Currently, the balance is still owing." (Doc. 1-1, p. 6). In addition to this response, Defendant Anesthesia Partners forwarded PFC billing information to support their claim of an outstanding balance. (Doc. 1, ¶ 56). While Plaintiff does not directly assert such a bald and conclusory allegation that "the billing information is incorrect," Plaintiff sets forth various allegations that lend to the reasonable, and arguably obvious, conclusion that its accuracy is in dispute. (*See* Doc. 1, ¶¶ 58–64; Doc. 1-1, pp. 7–10). In fact, Plaintiff labels the billing information as "extremely convoluted." (Doc. 1, ¶ 58). Plaintiff further alleges that Defendant Anesthesia Partners "appears to be claiming that 0+0+0+0+0 = $375.16" in the billing documents. (*Id.* ¶¶ 59–61). Thus, it is important to note Defendant Anesthesia Partners' claim that Plaintiff made "no allegations the billing information was incorrect" is misguided. (Doc. 22, p. 6). In a sense, such an allegation is the essence of the Complaint.

are attributed to the corporation." *Scott*, 2008 WL 4613083, at *3. Therefore, when an agent acting within the scope of his or her employment attempts "to collect a debt on behalf of a corporation that has vested him [or her] with that authority, the corporation itself has sought to collect that debt." *Id.* Analogously, PFC, hired by Defendant Anesthesia Partners to collect outstanding money owed, logically acted on behalf of and in furtherance of Defendant Anesthesia Partners' business when it contacted Plaintiff to recover the Debt. Thus, as an agent of Defendant Anesthesia Partners, PFC's actions to collect the debt—via its initial collection letter and any subsequent attempts—are attributable to Defendant Anesthesia Partners. Consequently, under either an agency theory or Defendant Anesthesia Partners' direct involvement, Plaintiff has sufficiently alleged facts that could support a conclusion Defendant Anesthesia Partners "claim[ed], attempt[ed], or threaten[ed] to enforce" a debt it knew had been extinguished. § 559.72(9).

For these reasons, the Court finds Plaintiff has pled sufficient acts that, taken as true, establish a plausible claim for relief under the FCCPA.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Anesthesia Partners' Motion to Dismiss (Doc. 22) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on October 4, 2022.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties